IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLEVE COTTON, on behalf of plaintiff and the class defined, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 10-cv-4709 |
| v. | ) ) | Magistrate Judge Maria Valdez |
| NATIONAL ACTION FINANCIAL SERVICES INC., | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO STAY PROCEEDINGS PENDING ARBITRATION**

Defendant, National Action Financial Services, Inc. ("NAFS" or "Defendant"), by counsel, moves this Court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, for entry of an Order compelling arbitration and staying this action pending arbitration.[1] In support of this Motion, Defendant states as follows:

**BACKGROUND**

**A.     Procedural History**

Plaintiff, Cleve Cotton ("Plaintiff"), filed this putative class action against Defendant on July 28, 2010, asserting a claim for violations of the Telephone Consumer Protection Act

---

[1] Pursuant to the Court's Case Management Procedures and, specifically, the meet and confer requirement, Defendant's counsel, Jeff Pilgrim, spoke with Plaintiff's counsel, Francis Greene, by telephone on August 29, 2011 (at approximately 4:00 p.m.), and advised Mr. Greene of Defendant's intention of filing this Motion. Mr. Pilgrim explained the basis of the Motion, as set forth herein. Mr. Greene stated that he would consider those points and then contact Mr. Pilgrim to discuss the matter further. Accordingly, on August 30, 2011, and then again on August 31, 2011, Mr. Greene sent emails to Mr. Pilgrim stating that Plaintiff anticipates opposing Defendant's request for arbitration. Mr. Greene suggested that the settlement of a certain lawsuit and a recent decision from a court in Florida indicated that Defendant's request for arbitration may not be appropriate. After the parties' consultations and good faith attempts to resolve their differences, they are unable to reach an accord.

("TCPA"), 47 U.S.C. § 227 *et seq.* (Dkt. # 1.) Two days later, Plaintiff filed a "Motion for Preliminary Class Certification." (Dkt. # 7.)

On August 27, 2010, seven days after Defendant's response to the Complaint was due but before Defendant had appeared, Judge Norgle granted Plaintiff's Motion for Preliminary Class Certification. (Dkt. # 11.) Thereafter, Defendant's counsel was retained and filed their appearances, along with an Unopposed Motion for Extension of Time to Answer or Otherwise Plead to the Complaint. (Dkt. # 14.) Judge Norgle granted Defendant's motion and extended its responsive pleading deadline to October 13, 2010. (Dkt. # 18.)

On October 1, 2010, Plaintiff filed an Amended Complaint to revise the alleged class definition, as well as a motion to amend Judge Norgle's August 27th order certifying the class to reflect the new class definition. (Dkt. ## 20, 21.) On October 7, 2010, Judge Norgle granted Plaintiff's motion, without a hearing or response, and amended the class certification order. (Dkt. # 23.)

On October 21, 2010, Defendant filed a Motion to Reconsider the Order Certifying a Class. (Dkt. # 25.) In response, the parties entered into a Stipulation and Agreed Order, in which they consented both to vacate the class certification order and to proceed before this Court. (*Id.*) The Stipulation and Agreed Order was entered by Judge Norgle on November 17, 2010. (*Id.*)

On January 7, 2011, this case was formally reassigned to this Court pursuant to the Consent to Proceed Before United States Magistrate Judge, which the parties had signed and submitted on November 17, 2010. (Dkt. # 32.) On February 8, 2011, the parties held their Rule 26(f) Conference, and later filed their Joint Status Report on February 25, 2011. (Dkt. # 34.) On March 3, 2011, the parties appeared before the Court for the initial status conference, at which

time the Court entered a discovery schedule. (Dkt. # 36.) Since that time, the parties have been engaged in discovery.

**B.     Plaintiff's Claims**

Plaintiff's claims arise from Defendant's alleged attempts to collect a credit card debt that Plaintiff originally owed to Capital One. (Am. Compl. ¶¶ 1, 8; Ans. ¶ 8.) Specifically, Plaintiff contends that in Defendant's attempts to collect that debt, Defendant placed automated calls to Plaintiff's cell phone without his consent, allegedly in violation of the TCPA. (Am. Compl. ¶ 20.) Plaintiff seeks to bring his claims on behalf of both himself as well as a class of individuals who "received automated calls to their cellular telephones from defendant . . . trying to collect a Capital One debt." (Am. Compl. ¶ 21.)

**C.     Plaintiff's Agreement to Arbitrate**

Plaintiff's account and resulting debt were assigned by Capital One and are currently owned by Pinnacle Credit Services ("Pinnacle"). (Declaration of Reid Strand ¶ 9, attached as Exhibit A.) Pinnacle then assigned its rights to pursue collection of Plaintiff's account to Defendant. (Ex. A ¶ 10.)

In response to a subpoena issued to Capital One, Defendant received for the first time, approximately two weeks ago, a copy of the Customer Agreement ("Agreement") governing Plaintiff's account.[2] Notably, the Agreement contains an Arbitration Provision which subjects

---

[2] A copy of the Subpoena issued to Capital One, requiring production of all documents related to Plaintiff's account, is attached as Exhibit B. In response, Capital One made two separate productions. The first one was sent by Capital One by letter dated July 7, 2011, and was comprised entirely of copies of Plaintiff's account statements. The second one was sent by Capital One by letter dated August 16, 2011, and received by Defendant's counsel on or about August 22, 2011. Copies of these documents, comprised of (1) Capital One's August 16, 2011 cover letter, (2) an "Account Information Sheet" (redacted), and (3) the Customer Agreement, are attached, collectively, as Exhibit C. For ease of reference, the Agreement is separately attached as Exhibit D.

3

Plaintiff's claims to binding arbitration. (Ex. D.) In particular, this provision states as follows:

> **ARBITRATION:**
>
> You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.
>
> **IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROCEEDING. . . .**
>
> \* \* \*
>
> **No Consolidation or Joinder of Parties.** The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action, or other representative or collective action. Unless all parties consent, neither you nor we may join, consolidate, or otherwise bring Claims related to two or more accounts, individuals, or account holders in the same arbitration. Also, unless all parties consent, neither you nor we may pursue a class action, private attorney general action, or other representative or collective action in arbitration, nor may you or we pursue such actions in Court if any party has elected arbitration. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim as to which arbitration has been elected.

(Ex. D, emphasis in original.)

The Arbitration Provision is between Plaintiff and those entities defined as "'we,' 'us' and 'our,'" as follows:

> **"We," "us" and "our"** mean the owner of your account (Capital One Bank or Capital One, F.S.B.), its parent and their direct and indirect subsidiaries and affiliates, as well as all of their respective employees, officers, directors, licensees, predecessors, successors, and assigns.

4

(*Id.*, emphasis in original.) Moreover, the Arbitration Provision requires arbitration of any "Claim," broadly defined as "any claim, controversy, or dispute of any kind or nature between you and us." In this regard, it is further specified that:

> *A. This definition includes, without limitation, any Claim that in any way arises from or relates to:* . . .
>
> •this Arbitration Provision (including whether any Claim is subject to arbitration) . . .
>
> •any . . . communications relating to your account, whether they occurred before or after your account was opened . . .
>
> •any . . . collections matters relating to your account . . .
>
> •our receipt, use, or disclosure of any information about your or your account . . .
>
> •any other matters relating to your account or your relationship with you.
>
> *B. This definition also includes, without limitation, any Claim:* . . .
>
> •made as art of a class action, private attorney general action, or other representative or collective action, which Claim shall proceed on an individual basis as set forth more fully in this Arbitration Provision.

(*Id.*, emphasis in original.)

Based on this Agreement, Plaintiff's claims belong in arbitration.

## ARGUMENT

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts – like the Agreement here – involving transactions in interstate commerce. *See* 9 U.S.C. § 1. Section 2 of the FAA makes arbitration agreements "valid, irrevocable, and enforceable" as written; Section 3 "requires courts to stay litigation or arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'"; and Section 4 "requires courts to compel

arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011) (quoting 9 U.S.C. §§ 2, 3, 4). As the United States Supreme Court has repeatedly emphasized, the FAA embodies a strong "national policy favoring arbitration." *Id.* at 1749.

Moreover, "[t]he overarching purpose of the FAA, evident in the text of §§2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748. Accordingly, the Supreme Court has instructed that "courts *must* place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Id.* at 1745 (citations omitted) (emphasis added).

It has been recognized that "[t]his [C]ourt has little discretion in this area of the law; the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration has been signed.'" *Johnson v. Arrow Fin. Servs., LLC*, 2006 WL 2710663, at *3 (N.D. Ill. Sept. 15, 2006), *quoting Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, in determining whether to compel arbitration, a court must limit its inquiry to (1) whether a valid agreement to arbitrate exists, and, if it does (2) whether the agreement encompasses the dispute at issue. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). Given the "federal policy favoring arbitration," *AT&T Mobility*, 131 S.Ct. at 1745, any doubts must be resolved in favor of arbitration, *see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). And notably, the presumption of arbitrability can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, because a valid agreement to arbitrate exists between Plaintiff and Defendant, and because that agreement clearly encompasses Plaintiff's claims, the Court should compel Plaintiff to arbitrate his claims and stay these proceedings pending that arbitration.

**A.     There Is A Valid Agreement to Arbitrate.**

    **1.     *Defendant is included in the group of entities expressly subject to the Arbitration Provision.***

The Arbitration Provision within the Agreement constitutes a valid agreement between Plaintiff and Defendant to arbitrate their claims. By its terms, the agreement is between "[Plaintiff] and we"; and "we" is defined as "the owner of your account (Capital One Bank or Capital One, F.S.B.), its parent and their direct and indirect subsidiaries and affiliates, as well as all of their respective . . . assigns." (Ex. D.) Because Plaintiff's account was assigned from Capital One ultimately to Pinnacle, and then from Pinnacle to Defendant, (Ex. A), Defendant is an "assign" of Capital One, the original "owner of [Plaintiff's] account," (Ex. D). *See, e.g.*, *Luecke v. Wallace*, 951 S.W.2d 267, 273 (Tex. App. Ct. 1997), *quoting Black's Law Dictionary* 119 (6th ed. 1990) ("The word 'assigns' includes those individuals who take property '*either immediately or remotely* from . . . the assignor.'"); *Waukegan Times Theatre Corp. v. Conrad*, 324 Ill. App. 622, 636 (2d Dist. 1945) ("We think there can be no doubt that the word 'assigns' includes successive assigns."). At the same time, Defendant is also an "assign" of Pinnacle, the current "owner of [Plaintiff's] account." (Ex. D.)

Therefore, the Arbitration Provision is clearly between Plaintiff and Defendant and constitutes a valid agreement to arbitrate.

7

## 2. *Defendant is also entitled to enforce the Arbitration Provision under equitable estoppel and agency principles.*

Moreover, Defendant, as a non-signatory, can enforce the Arbitration Provision under both (1) the doctrine of equitable estoppel and (2) agency principles.

### a. **Equitable estoppel**

First, under the doctrine of equitable estoppel, a non-signatory can compel arbitration "'when the signatory must rely on the terms of the written agreement in asserting its claim against a non-signatory.'" *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004-05 (N.D. Ill. 2001) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). In this regard, "when each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate." *Id.* Accordingly, courts have concluded that where a plaintiff brings claims based on conduct related to the collection of a debt that exists by virtue of a written cardholder agreement, plaintiff's claims clearly "make[ ] reference to or presume[ ] the existence of the written agreement." *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 869-70 (E.D. Wis. 2006); *Liedtke v. Frank*, 437 F. Supp. 2d 696, 699-700 (N.D. Ohio 2006); *Johnson*, 2006 WL 2710663, at *5. As one court explained, "[p]laintiffs cannot acknowledge the debt and ignore the concomitant arbitration provision." *Tickanen*, 461 F. Supp. 2d at 870.

Similarly, here, Plaintiff's claims arise from Defendant's alleged efforts to collect Plaintiff's Capital One debt, which arose from the Agreement. (Am. Compl. ¶¶ 1, 8-13, 21.) Indeed, as Plaintiff alleges, he "brings this action to secure redress from unlawful credit and collection practices engaged by [Defendant]." (*Id.* ¶ 1.) Plaintiff alleges that "Defendant has been attempting to collect from plaintiff an alleged Capital One debt incurred for personal,

family or household purposes," and he seeks to represent a class of individuals whom Defendant allegedly called "trying to collect a Capital One debt." (Am. Compl. ¶¶ 8, 21.) Certainly, by suing Defendant based on its alleged debt collection activities, Plaintiff's claims "presume[ ] the existence of" the Agreement which gave rise to the debt. *Hoffman*, 143 F. Supp. 2d at 1004-05. Therefore, Plaintiff's claims "arise out of and relate directly to the written agreement and arbitration is appropriate." *Id.*

### b. Agency

Second, "an agreement containing an arbitration clause covers non-signatories under . . . agency principles." *Id.* In this regard, Pinnacle is the current "owner of [Plaintiff's] account" (as well as an "assign" of Capital One), (Exs. A, D); accordingly, Pinnacle is clearly a party to the Arbitration Provision. And because Defendant is Pinnacle's agent (as well as its "assign"), (Ex. A ¶¶ 9-10 & Ex. 1), Defendant is subject to and can enforce the Arbitration Provision, *see e.g.*, *Morante v. American Gen. Fin. Ctr.*, 157 F.3d 1006, 1009-10 (5th Cir. 1998) (finding that the debt collector is an agent of the debt owner). Thus, for this reason as well, Defendant has the right to compel arbitration.

### B. The Arbitration Provision Encompasses The Dispute At Issue.

The Arbitration Provision certainly covers Plaintiff's claims. In short, Plaintiff contends that Defendant unlawfully placed automated calls to Plaintiff's cell phone in its attempt to collect Plaintiff's Capital One debt. (Am. Compl. ¶¶ 1, 8, 20.) The Arbitration Provision provides that Plaintiff and Defendant "agree that either [party] may, at either party's sole election, require that any Claim . . . be resolved by binding arbitration." (Ex. D.) "Claim" is broadly defined as "any claim, controversy, or dispute of any kind or nature between [Plaintiff] and [Defendant]," (*id.*), which unquestionably encompasses Plaintiff's claims here. But to make it even more clear, the

9

Arbitration Provision specifies that it covers "any Claim that in any way arises from or relates to . . . any collection matters relating to [Plaintiff's] account [and] any . . . communications relating to [Plaintiff's] account," among other things. (*Id.*) And it expressly covers "any Claim . . . made as part of a class action." (*Id.*)

Quite simply, the Arbitration Provision could not be clearer that it encompasses the claims that Plaintiff has asserted here. Accordingly, Plaintiff's claims belong in arbitration, and therefore the Court should compel the parties to arbitration and stay these proceedings.

## CONCLUSION

For the reasons stated above, Defendant, National Action Financial Services, Inc., respectfully requests that the Court grant this Motion and enter an Order compelling arbitration and staying this action pending arbitration.[3]

                                          Respectfully submitted,

                                          NATIONAL ACTION FINANCIAL
                                          SERVICES, INC.

                                        By: s/ Jeffrey D. Pilgrim
                                             One of its attorneys

Jeffrey D. Pilgrim
Danielle M. Kays
Grady Pilgrim Christakis Bell LLP
53 West Jackson Boulevard, Suite 1515
Chicago, Illinois 60604
Phone: (312) 939-6480
Fax: (312) 939-0983

---

[3] Based on the fact that Defendant just discovered the Arbitration Provision and its right to compel arbitration, Defendant has not engaged in formal discovery on arbitration-related matters. To the extent further evidence is required, Defendant respectfully requests the opportunity to take limited discovery related to this Motion.

## CERTIFICATE OF SERVICE

      Jeffrey D. Pilgrim, an attorney, certifies that on September 6, 2011, he electronically filed the foregoing **Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration** with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

    Daniel A. Edelman
    Cathleen M. Combs
    James O. Latturner
    Francis R. Greene
    Edelman, Combs, Latturner & Goodwin, LLC
    120 South LaSalle Street, 18th Floor
    Chicago, IL 60603

                                                            s/ Jeffrey D. Pilgrim

Jeffrey D. Pilgrim
Danielle M. Kays
Grady Pilgrim Christakis Bell LLP
53 West Jackson Boulevard, Suite 1515
Chicago, Illinois 60604
Phone: (312) 939-6480
Fax: (312) 939-0983