**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEVE COTTON, | ) | |
| on behalf of plaintiff and the class defined | ) | |
| below, | ) | |
| | ) | |
| Plaintiff, | ) | 10-cv-4709 |
| | ) | |
| vs. | ) | Magistrate Judge Valdez |
| | ) | |
| NATIONAL ACTION FINANCIAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**AGREED MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

Plaintiff Cleve Cotton, with the agreement of Defendant National Action Financial

Services, Inc., respectfully requests that the Court enter an order (i) granting preliminary

approval of the proposed class action Settlement Agreement and Release ("Agreement"),

attached as Appendix A, (ii) approving the form of the Notices of Class Action and Proposed

Settlement ("Class Notices"), attached to the Agreement as Exhibits 1 and 2, (iii) designating

Edelman, Combs, Latturner & Goodwin, LLC as Class Counsel, and (iv) setting dates for opt-

outs, objections, return of claim forms, and a hearing for final approval.

In support of this motion, Plaintiff states as follows:

1.      Plaintiff claims that Defendant violated the Telephone Consumer Protection Act,

47 U.S.C. § 227(b)(1)(C) by using an automatic telephone dialing system or an "artificial or

prerecorded voice" in connection with telephone calls to cellular telephones without the prior

consent of Plaintiff and Class Members. Defendant contests class certification and denies

liability to Plaintiff and the Class.

2.      Plaintiff and Defendant acknowledge that there are risks to both parties in continuing litigation. Defendant had raised a number of defenses to liability and was contesting class certification. Defendant also had moved to stay the case and compel the arbitration of Plaintiff's claims. Thus, if Defendant's motion was granted, only Plaintiff's individual claims could be arbitrated as the arbitration clause relied on by Defendant contains a class action waiver. Conversely, if Defendant's motion to compel arbitration was denied, and Plaintiff was successful in certifying a class and establishing Defendant's liability, the judgment would likely exceed $25 million, and possibly far more if Plaintiff established that Defendant's conduct was willful.

3.      In light of the risks to both parties in continuing the litigation, and after good faith and arms-length negotiations, the parties decided to settle on the terms and conditions set forth in the Agreement executed by the parties, attached hereto as Appendix A.

4.      The parties desire to settle and compromise the litigation on the terms and conditions embodied in the Agreement and agree, in summary, as follows:

a.      For settlement purposes only, the parties have stipulated to the certification of a Settlement Class defined as follows:

> All persons with cellular telephone numbers in the Illinois area codes (217, 224, 309, 312, 331, 464, 618, 630, 708, 773, 779, 815, 847, or 872) who, on or after July 28, 2006, and on or before August 17, 2010, received Automated Calls to their cellular telephones from Defendant trying to collect an alleged Capital One Bank debt.

> The Class consists of approximately 1,700 individuals, according to Defendant's records.

b.      Defendant consents to the entry of a judgment against it and in favor of Plaintiff and the Class in the amount of $4 million ($4,000,000). Defendant also agrees to assign to Plaintiff on behalf of the Class, Defendant's rights, title, and interests in an insurance policy

2

issued by the Illinois Union Insurance Company ("Illinois Union"), which in the parties' belief

provides $15 million in coverage for claims such as that of Plaintiff. The Illinois Union

insurance policy is attached hereto as Appendix B. Illinois Union has denied Defendant's claim

for coverage. Appendix C. Plaintiff agrees to enforce the judgment only against the proceeds of

the Illinois Union insurance policy and not against Defendant. *Guillen v. Potomac Ins. Co.*, 784

N.E.2d 1, 11-15 (Ill. 2003).

          c.     Therefore, if the Court approves the settlement, then Plaintiff and Class

Counsel, on behalf of the Class, will, at their sole expense, pursue claims against Illinois Union

to recover the amount of the judgment, or as much of the judgment amount as can practically be

recovered, which amount will constitute the Settlement Fund, to be distributed as follows:

          (i)     Plaintiff will receive $20,000.00 in settlement for his individual

claims and as an incentive award for his services as Class Representative;

          (ii)     Subject to this Court's approval, Class Counsel will receive up to

one-third of the Settlement Fund for attorneys' fees and costs.

          (iii)     The Class Members will receive a *pro rata* share of the Settlement

Fund that remains after deducting Plaintiff's recovery and Class Counsel's fees and costs, as set

forth above. Plaintiff estimates that, if the entire amount of the judgment is recovered, and all

Class Members timely return a claim form, each Class Member will receive a *pro rata* share

equal to approximately $1,500. The Agreement provides that Class Member settlement checks

will become void 60 (sixty) days after they are issued, and that any funds that remain for

uncashed checks after the void date will be returned to Defendant's Insurer(s).

d.  The cost of providing notice to the Class and of the administration of the settlement shall be paid by Defendant, up to $20,000, separate and apart from the Settlement Fund.

e.  The Agreement provides for sending two notices to Class Members. The first notice (Exhibit A to the Agreement) will be mailed to Class Members within 28 days after the entry of the Preliminary Approval Order, and the second notice (Exhibit B to the Agreement) will be mailed within 58 days of the entry of the Preliminary Approval Order. Class Members will have 60 days after the mailing of the first notice to object to, or opt out of, the proposed settlement.

f.  Any Class Member may seek to be excluded from the Agreement and the settlement by opting out of the Class within the time period set by this Court. Any Class Member who opts out of the Class shall not be bound by any prior Court Order or the terms of the Agreement and shall not be entitled to any of the monetary benefits set forth in the Agreement.

5.  As set forth above, under the Agreement, Defendant consents to a judgment to be entered against it in the amount of $4 million and assigns to Plaintiff, on behalf of the Class, Defendant's rights, title, and interests in an insurance policy issued by Illinois Union. If the Court approves the settlement, then Plaintiff and Class Counsel, on behalf of the Class, will, at their sole expense, pursue claims against Illinois Union to recover the amount of the judgment, or as much of the judgment amount as can practically be recovered; as a result, a few different scenarios may occur:

- A court determines that the Illinois Union insurance policy applies to Plaintiff's TCPA claim, and Plaintiff recovers $4,000,000 from Illinois Union for himself and the Class.

- A court determines that the Illinois Union insurance policy applies to Plaintiff's TCPA claim, and Plaintiff recovers $4,000,000 from Illinois Union, less a $1,000,000 retention, for a total of $3,000,000 for himself and the Class.

- A court determines that the Illinois Union insurance policy does not apply to Plaintiff's TCPA claim, and Plaintiff recovers $0 for himself and the Class.

- Plaintiff settles with Illinois Union for some amount of money up to $4,000,000 for himself and the Class. Any such settlement would have to be approved by this Court.

6.      With respect to Plaintiff's claims against Illinois Union, Illinois Union has denied coverage for Plaintiff's claims based on an exclusion in the policy. The exclusion states in relevant part:

> The **Insurer** shall not be liable for **Damages** . . . on account of any **Claim**:
> . . . .
> BB.      alleging, based upon, arising out of or attributable to any unsolicited electronic dissemination of faxes, e-mails or other communications to multiple actual or prospective customers of the **Insured**, any **Subsidiary**, or any other third party, including but not limited to actions brought under the Telephone Consumer Protection Act, any federal or state anti-spam statutes, and/or any other federal or state statute, law or regulation relating to a person's or entity's right of seclusion.

(Appendix 2, pp. 8, 10, emphasis in the original.)

7.      Notably, Exclusion BB is quite distinct from the standard form of exclusion for TCPA liability used in the insurance industry. The standard TCPA exclusion issued by the Insurance Services Office excludes coverage for:

> q. Distribution Of Material In Violation Of Statutes
>
> "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
>> (1)      The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3)    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

8.    In Plaintiff's view, by using Exclusion BB instead of the standard TCPA exclusion, the policy makes clear that not all violations of the TCPA are excluded, but only those involving the "unsolicited electronic dissemination of faxes, e-mails or other communications by or on behalf of the Insured to multiple actual or prospective customers of the Insured or any other third party."

9.    Prior to Illinois Union issuing the policy to Defendant, the Federal Communications Commission, which is responsible for interpreting the TCPA, had held that debt collection calls are not unsolicited. 47 C.F.R. §64.1200(a)(2)(iii). Read in context, Exclusion BB does not bar coverage arising out of the placement of collection calls to specific persons alleged to owe debts to clients of Defendant. Such calls are not an "unsolicited electronic dissemination of faxes, e-mails or other communications by or on behalf of the Insured to multiple actual or prospective customers of the Insured or any other third party."

10.    Although Illinois courts are split on whether violations of the TCPA are insurable, *Standard Mutual Ins. Co. v. Lay*, 2012 Ill. App. LEXIS 291 (Ill. App. Ct. April 20, 2012) (holding that they are not insurable), *Ins. Corp. of Hanover v. Shelborne Assocs.*, 389 Ill. App. 3d 795, 800-803, 905 N.E.2d 976 (Ill. App. Ct. 2009) (holding they are insurable), under Tennessee law, the law governing Defendant's policy with Illinois Union, it would appear that violations are insurable. *Lazenby v. Universal Underwriters Ins. Co.*, 383 S.W.2d 1, 5 (Tenn. 1964).

11. Overall, Plaintiff and Class Counsel believe that the settlement of this action on the terms and conditions set forth in the Agreement is fair, reasonable and adequate, and would be in the best interests of the members of the Class.

12. Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcome of one or more procedural and substantive appeals. Based on their review and analysis, Plaintiff and Defendant entered into the Agreement.

13. Plaintiff requests that the Court set the following schedule related to the proposed Agreement: (i) a deadline of 28 days from the date of the entry of the Preliminary Approval Order for Plaintiff to cause notice to be mailed to the Class; (ii) a deadline of 88 days from the date of the entry of the Preliminary Approval Order for Class Members to submit claim forms, opt out or object; (iii) a hearing date approximately 30 days thereafter to permit the processing of claim forms and compliance with the Class Action Fairness Act of 2005 ("CAFA")[1]; and (iv) a deadline of 7 days prior to the above hearing date for the parties to submit any memoranda in support of the settlement.

14. In the event that there is any conflict between any provision of this Motion and the Settlement Agreement, the parties intend for the Settlement Agreement to control.

---

[1] CAFA requires Defendant to serve notice to state and/or federal officials within 10 days of the filing of this motion and Settlement Agreement, and requires that an order giving final approval of the Settlement Agreement may not be issued earlier than 90 days after notice is served. As this notice will occur prior to the mailing of the notice to the Class, the proposed schedule, consisting of 118 days after preliminary approval and before the final hearing, complies with CAFA.

WHEREFORE, Plaintiff Cleve Cotton, with the agreement of Defendant National Action Financial Services, Inc., respectfully requests that this Court enter an order in the form of Exhibit C to the Agreement which:

(i)     Preliminarily approves the settlement;

(ii)    Conditionally certifies for the purposes of settlement the Settlement Class;

(iii)   Schedules a hearing for final approval of this Agreement; and

(iv)    Approves the form and manner of Class Notice as set forth in Exhibits A and B to the Agreement and finds that such notice satisfies the requirements of due process pursuant to the Federal Rules of Civil Procedure, the United States Constitution and any other applicable law and finds that no further notice to the Settlement Class is required.

Respectfully Submitted,

s/Francis R. Greene
Counsel for Plaintiff

**EDELMAN COMBS LATTURNER
& GOODWIN, LLC**
Daniel Edelman
Cathleen M. Combs                                          .
James O. Latturner
Francis R. Greene
120 S. LaSalle Street, 18th Floor
Chicago, IL  60603
(312) 739-4200

## <u>CERTIFICATE OF SERVICE</u>

I, Francis R. Greene, hereby certify that April 27, 2012, I caused to be filed the forgoing documents with the Clerk of the Court using the CM/ECF System, which will cause to be sent notification of such filing to the following parties:

Jeffrey Pilgrim
jpilgrim@gradypilgrim.com

Anna-Katrina S. Christakis
kchristakis@gradypilgrim.com

Danielle M. Kays
dkays@gradypilgrim.com

s/Francis R. Greene
Francis R. Greene
